# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# DISTRICT OF MARYLAND

TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL: (410) 962-3962
FAX: (410) 962-0872

JAMES WYDA  
FEDERAL PUBLIC DEFENDER

MAGGIE GRACE  
ASSISTANT FEDERAL PUBLIC DEFENDER

November 30, 2023

*Via CM/ECF*

The Honorable Brendan A. Hurson
United States District Judge
United States Courthouse
101 W. Lombard Street
Baltimore, MD 21210

      Re:    *United States v. Tyrone McFadden*, Criminal No. LKG-23-17

Dear Judge Hurson:

      Tyrone McFadden is scheduled to appear before Your Honor on December 11, 2023 at 10:00 a.m. following his guilty plea to possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). The parties have entered into an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) that Mr. McFadden should be sentenced to 60 months' imprisonment. ECF No. 18 (Plea Agreement) ¶ 9. Because this is the sentence that is sufficient but not greater than necessary to fulfill the § 3553(a) sentencing goals, we respectfully request that the Court accept the Parties' c-plea agreement and sentence Mr. McFadden accordingly.

## **The Guidelines**

      The U.S. Sentencing Guidelines are 70-87 months' imprisonment, corresponding to an adjusted offense level of 21 and Criminal History Category V. PSR ¶ 99.

      The base offense level is 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A), as Mr. McFadden committed the instant offense after sustaining a controlled substance offense. *Id.* ¶ 16. Four levels are added because he possessed the firearm in connection with another felony offense (controlled substance distribution) pursuant to U.S.S.G. § 2K2.1(b)(6)(B). *Id.* ¶ 17. Mr. McFadden will receive a two-level reduction for acceptance of responsibility, and I anticipate the government will move for an additional one-level reduction under U.S.S.G. § 3E1.1(b), making the final offense level 21. *Id.* ¶ 25. Mr. McFadden falls within CHC V because he has nine criminal history points and receives an additional one point for being on parole at the time of the offense. *Id.* ¶¶ 36-38.

*United States v. Tyrone McFadden*, Criminal No. BAH-23-017
November 30, 2023 Letter to Judge Hurson
Page 2 of 4

## The Appropriate Sentence Under 18 U.S.C. § 3553(a)

The requested sentence is appropriate for all the reasons in 18 U.S.C. § 3553(a), but particularly given Mr. McFadden's history and characteristics, his plans to relocate with his sister in Texas following his release from prison, and the goals of sentencing.

### *Nature And Circumstances Of The Offense*

The conduct to which Mr. McFadden has pled guilty to is of course serious. Mr. McFadden has pled guilty, accepted responsibility for his actions, and makes no excuses for his conduct. In sentencing Mr. McFadden, however, we ask the Court to consider certain mitigating factors that weigh in his favor. There are no allegations in this case, unlike others we sometimes see in federal court, that Mr. McFadden was actively using or threatening to use the firearm against a person or law enforcement. And from the moment officers walked up to Mr. McFadden on a stoop, he was compliant and did not act dangerously. That compliance has extended through his decision to forego litigation of any dispositive pretrial motions and to timely plead guilty.

### *Mr. McFadden's History And Characteristics And Plans For The Future*

While everyone is responsible for their actions and decisions, Mr. McFadden finds himself at 41 years old for the first time in federal court having tread a difficult life path thus far. Mr. McFadden grew up in extreme poverty in Baltimore, residing in what he calls "the hood," and was raised by a mother who beat him at times and suffered with addiction. This was after losing (both literally and figuratively) his father at a young age due to a crippling illness. As noted in the PSR, Mr. McFadden's sister recalled times when she and her brother would stay in a shelter because they were "in survival mode."

That traumatic upbringing, unfortunately, but not surprisingly, set the stage for a string of convictions starting at a young age. Mr. McFadden's only conviction for a violent offense occurred when he was 19 years old (over 20 years ago). While he has offended since then, the PSR indicates that his convictions since then are for drug offenses and firearm possession offenses.

Importantly, with age, Mr. McFadden has gained introspection about what he needs in his life to succeed. Mr. McFadden was refreshingly open and forthcoming with Probation during his Presentence Report Interview. As he told Probation, he recognizes that he needs to create more opportunities for himself which means getting out of Baltimore. Once he completes his prison sentence, Mr. McFadden plans to move to Texas with his sister Tyonne McFadden. Mr. McFadden wishes she could attend sentencing, but that is not possible given her residence in Texas. As can be seen in the information she shared with Probation for the PSR, Ms. McFadden shares a close relationship with her brother, is aware of the issues he struggles with, and is supportive of him.

*United States v. Tyrone McFadden*, Criminal No. BAH-23-017
November 30, 2023 Letter to Judge Hurson
Page 3 of 4

### *The Sentencing Guidelines And The Need To Avoid Unwarranted Sentence Disparities*

The parties' request for a 60-month sentence is only slight below the low-end of the Guidelines. The U.S. Sentencing Guidelines are 70-87 months' imprisonment, corresponding to an adjusted offense level of 21 and Criminal History Category V. PSR ¶ 99. The Judiciary Sentencing Information included in the PSR indicates that the average length of imprisonment for individuals whose primary guideline was § 2K2.1, with a final offense level of 21 and a Criminal History Category of V, after excluding individuals who received a § 5K1.1 substantial assistance departure, is 66 months with a median sentence of 70 months. The parties' request is only slightly below those numbers, and the slight discrepancy is justified by Mr. McFadden's age and plans for the future, particularly to remove himself from an environment that has not been healthy for him and to move to Texas for the purpose of creating more opportunities.

### *The Purposes Of Sentencing*

A 60-month sentence is a serious one, particularly for someone who has Mr. McFadden's medical history. Mr. McFadden describes his physical health as poor. He suffers pain due to a bullet that has been lodged in his spine since 2004. He reports nerve damage and gastrointestinal issues due to a portion of his intestines having been previously removed as a result of that incident. He also reports asthma, high blood pressure, and high cholesterol, and he is obese. He suffers from depression too. It is no secret that medical care in the Bureau of Prisons has been the subject of constant criticism over the years,[1] meaning that Mr. McFadden will feel the punitive effects of a prison sentence more than the average individual.

Mr. McFadden's introspection about the need to move away from Baltimore reflect that he has already been specifically deterred and there is not a significant need for incapacitation to protect the public. As to general deterrence, the fact that Mr. McFadden was caught and prosecuted

---

[1] *See, e.g.*, U.S. Dep't of Justice, Office of the Inspector General, Audit Division, "The Federal Bureau of Prison's Efforts to Manage Inmate Health Care," Audit Report 08-08 (Feb. 2008) (for example, finding lack of provision of recommended preventive health care to inmates, finding that inmates with chronic care conditions were not monitored as required at many institutions, and finding that inmates were not monitored for psychotropic medical side effects at many institutions); Office of the Inspector General, U.S. Dep't of Justice, "The Impact of an Aging Inmate Population on the Federal Bureau of Prisons" (Feb. 2016) ("As a result, aging inmates experience delays receiving medical care. For example, using BOP data from one institution, we found that the average wait time for inmates, including aging inmates, to be seen by an outside medical specialist for cardiology, neurosurgery, pulmonology, and urology to be 114 days."); U.S. Dep't of Justice, Office of the Inspector General, Evaluation and Inspections Division 16-02, "Review of the Federal Bureau of Prisons' Medical Staffing Challenges" (Mar. 2016) ("[R]ecruitment of medical professionals is one of the BOP's greatest challenges and staffing shortages limit inmate access to medical care, result in an increased need to send inmates outside the institution for medical care, and contribute to increases in medical costs. Additionally, medical staff shortages can impact prison safety and security."); NPR, "1 in 4 Inmate Deaths Happens in the Same Federal Prison. Why?" (Sept. 23, 2023) (reporting that report that inmates "go[] without needed medical care" and "wait[] months or even years for treatment, including inmates with obviously concerning symptoms: unexplained bleeding, a suspicious lump, intense pain").

*United States v. Tyrone McFadden*, Criminal No. BAH-23-017
November 30, 2023 Letter to Judge Hurson
Page 4 of 4

provides the deterrent here to him and others who are similarly situated. There is no evidence that additional jail time provides a meaningful deterrent effect or will enhance public safety.[2]

Medical treatment, mental health treatment, and substance abuse treatment, all of which Mr. McFadden desires to receive, can more effectively be provided to him outside the prison environment and, accordingly, weigh in favor of the parties' requested sentence.

## **Conclusion**

For these reasons, we ask the Court to impose the following:

- A 60-month sentence of imprisonment with credit for time served since October 3, 2022;
- 2 years of supervised release;
- Imposition of the mandatory, standard, and recommended conditions of supervision, which counsel has already reviewed with Mr. McFadden;
- No fine;
- No restitution; and
- Forfeiture of a Glock model 30 .45 caliber handgun.

Respectfully,

/s/
Maggie Grace
Assistant Federal Public Defender

---

[2] *See, e.g.*, Valerie Wright, The Sentencing Project, "Deterrence in Criminal Justice: Evaluating Certainty Versus Severity of Punishment" 4 (Nov. 2010) ("Criminological research over several decades and in various nations generally concludes that enhancing the certainty of punishment produces a stronger deterrent effect than increasing the severity of punishment."); Daniel S. Nagin, "Deterrence in the Twenty-First Century: A Review of the Evidence," Crime & Justice, Vol. 42, No. 2013 (explaining that "[t]he evidence in support of the deterrent effect of the certainty of punishment is far more consistent and convincing than for the severity of punishment" and that "the effect of certainty rather than severity of punishment reflect[s] a response to the certainty of apprehension").